# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                            :

RIVERKEEPER, INC.,                    :

                   :  **COMPLAINT FOR**

        Plaintiff,       :  **DECLARATORY AND**

                   :  **INJUNCTIVE RELIEF AND**

   v.                  :  **CIVIL PENALTIES**

                   :

BESTWAY CARTING, INC. AND CITY   :  (Federal Water Pollution Control

RECYCLING CORP.,           :  Act, 33 U.S.C. §§ 1251 to 1387)

                   :

        Defendants.     :   case no: 1:18-cv-6555

                   :

------------------------------------------------------------ X

Plaintiff Riverkeeper, Inc. by and through its counsel, hereby alleges:

## I.

## INTRODUCTION

1.     This is a civil suit brought under the citizen suit enforcement provisions of the

Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the "Clean Water Act," "the

Act," or "CWA") to address and abate Defendants' ongoing and continuous violations of the

Act.

2.     Defendants discharge polluted stormwater runoff from their industrial activities

occurring in and around 151 Anthony Street, Brooklyn, New York 11222 (Block 2814, Lots 1, 6,

10, 18; and, Block 2813, Lots 50, 55, 65) into waters of the United States without a permit, in

violation of Sections 301(a) and 402(p)(2)(B) of the CWA, 33 U.S.C. §§ 1311(a) and

1342(p)(2)(B), and have failed to obtain coverage under and comply with the conditions of an

individual National Pollutant Discharge Elimination System ("NPDES") permit or the State of

1

New York, General Permit for the Discharge of Stormwater Associated with Industrial Activity ("the General Permit") issued by the New York State Department of Environmental Conservation ("DEC"), in violation of Sections 402(p)(3)(A) and (p)(4)(A) of the CWA, 33 U.S.C. §§ 1342(p)(3)(A) and (p)(4)(A), and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).

3.      Stormwater runoff is one of the most significant sources of water pollution in the nation, comparable to, if not greater than, contamination from industrial and sewage sources. With every rainfall event, hundreds of millions of gallons of polluted rainwater pour into the New York Harbor, Long Island Sound, Jamaica Bay, and other receiving waters in this District. The State of New York has designated more than 6,676 river miles, 317,000 acres of larger waterbodies, 560 square miles of harbors, bays and estuaries, 778 acres of wetland, and 592 miles of Great Lakes shoreline in the State as "impaired," or not meeting water quality standards, and unable to support beneficial uses such as fish habitat and water contact recreation.  In many of these waters, state water quality standards for metals, oil and grease, nutrient enrichment and oxygen depletion, inorganic pollutants, pathogens, taste, color, odor, and other parameters are consistently exceeded.  For the overwhelming majority of water bodies listed as impaired, stormwater runoff is cited as a primary source of the pollutants causing the impairment.

4.      Defendants' stormwater discharges contribute to this endemic stormwater pollution problem.  Defendants are in the business of collecting, transporting, storing and processing waste as well as maintaining a fleet of waste hauling trucks and roll-off waste containers. As precipitation comes into contact with pollutants generated by these industrial activities, it conveys those pollutants to Newtown Creek.  Contaminated stormwater discharges, such as those from the Facility, can and must be controlled to the fullest extent required by law in order to allow these water bodies a fighting chance to regain their health.

## II.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

6.      Plaintiff has complied with the notice requirements under Section 505(b)(1) of the CWA, 33 U.S.C. § 1365(b)(1).

7.      On September 29, 2017, Plaintiff provided notice of Defendants' violations of the Act and of their intention to file suit against Defendants; the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region II; and the Commissioner of DEC, as required by the Act, 33 U.S.C. § 1365(b)(1)(A), and the corresponding regulations at 40 C.F.R. §§ 135.1 to 135.3.  A true and correct copy of Plaintiff's notice letter is attached as Exhibit A and is incorporated by reference.

8.      More than sixty days have passed since the notice letter was served on Defendants and the state and federal agencies.

9.      Neither the EPA nor the State of New York has commenced or is diligently prosecuting a civil or criminal action to redress the violations alleged in this complaint.  *See* CWA § 505(b)(1)(B), 33 U.S.C. § 1365(b)(1)(B).

10.     This action is not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

11.     Venue is proper in the Eastern District of New York pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b)(2) because the source of the

violations complained of is located, and the acts and omissions giving rise to the claims occurred, within this judicial district.

## III.

## PARTIES

12.     Plaintiff Riverkeeper, Inc. is a not-for-profit environmental organization organized under the laws of the state of New York, with its principal place of business in Ossining, New York.  Riverkeeper's mission includes safeguarding the ecological and biological integrity of the Hudson River and its tributaries.  Riverkeeper was originally founded by the Hudson River Fisherman's Association, a group of fishermen concerned about the ecological state of the Hudson River, and the effect of its polluted and degraded condition on fish. Riverkeeper achieves its mission through public education, advocacy for sound public policies and participation in legal and administrative forums. Riverkeeper has more than 3,000 members, many of whom reside near to, use and enjoy the Hudson River and the waters and tributaries of New York Harbor, including more than one hundred members that live in close proximity to Newtown Creek, which is polluted by industrial stormwater runoff from the Defendant' Facility.

13.     Riverkeeper's members use and enjoy the waters which Defendants have unlawfully polluted and is unlawfully polluting.  Many of Riverkeeper's members live near Newtown Creek, participate in community activities focused around Newtown Creek, and recreate upon and alongside the waters of New York Harbor, including Newtown Creek.  Water quality in Newtown Creek (and by extension, in New York Harbor) directly affects the health, recreational, aesthetic, commercial, and environmental interests of Riverkeeper's members.  The interests of Riverkeeper's members are adversely affected by Defendants' failure to comply with the requirements of the Clean Water Act.

14.    The relief sought herein will redress the harm to Plaintiff and its members caused by Defendant's activities.  Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff and its members, for which harm they have no plain, speedy or adequate remedy at law.

15.    Plaintiff is informed and believes, and thereupon alleges, that Defendants are corporations incorporated under the laws of the State of New York, which own and operate a facility at 151 Anthony Street, Brooklyn, New York 11222 (Block 2814, Lots 1, 6, 10, 18; and, Block 2813, Lots 50, 55, 65).

## IV.

## STATUTORY AND REGULATORY BACKGROUND

### The Clean Water Act

16.    Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  CWA § 101(a), 33 U.S.C. § 1251(a).  In furtherance of this goal, the Act provides a comprehensive approach for the regulation of pollution discharged into the waters of the United States.

17.    The CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States without a NPDES permit.  A NPDES permit requires dischargers of pollution to comply with various limitations.

18.    NPDES permits are issued by EPA or by States that have been authorized by EPA to act as NPDES permitting authorities, provided that the state permitting program ensures compliance with the procedural and substantive requirements of the CWA.  *See* 33 U.S.C. § 1342(b)(1); 40 C.F.R. § 123.25(a).

19.    In New York, DEC has been delegated the authority to issue NPDES permits.

**Stormwater Permits**

20.     In 1987, to better regulate pollution conveyed by stormwater runoff, Congress enacted Clean Water Act § 402(p), 33 U.S.C. § 1342(p), entitled "Municipal and Industrial Stormwater Discharges."

21.     Pursuant to Section 402(p), 33 U.S.C. § 1342(p), EPA promulgated stormwater discharge regulations at 40 C.F.R. § 122.26.

22.     In promulgating those regulations, EPA cited abundant data showing the harmful effects of stormwater runoff on rivers, streams and coastal areas across the nation.  In particular, EPA found that runoff from industrial facilities contained elevated pollution levels and that, on an annual basis, pollutant levels in stormwater runoff can exceed by an order of magnitude the levels discharged by municipal sewage treatment plants.  55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

23.     Sections 402(p) of the Act and EPA's implementing regulations at 40 C.F.R. § 122.26 require NPDES permits for stormwater discharges "associated with industrial activity."

24.     40 C.F.R. § 122.26(c)(1) provides that dischargers of stormwater associated with industrial activity must apply for an individual permit, apply for a permit through a group application, or seek coverage under a general permit.

25.     40 C.F.R, § 122.26(b)(13) defines "storm water" to include stormwater runoff, snow melt runoff, and surface runoff and drainage.

26.     40 C.F.R. § 122.26(b)(14) specifies that "storm water discharge associated with industrial activity" includes stormwater discharges from facilities engaged in activities classified under Standard Industrial Classification ("SIC") code 5093 (scrap and waste materials) and SIC Major Group 41 (Trucking). Facilities engaged in such activities must obtain NPDES permit coverage for their stormwater discharges.

## New York's General Permit for the Discharge
## of Stormwater Associated with Industrial Activity

27.     As a delegated state NPDES permitting agency, DEC has elected to issue a statewide general permit for industrial stormwater discharges in New York.  The current version of the "Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity," Permit No. GP-0-17-004 (the "General Permit") came into effect on March 1, 2018.

28.     In order to discharge polluted stormwater lawfully in New York, industrial dischargers must obtain coverage under the General Permit and comply with its terms or obtain coverage under and comply with an individual NPDES permit.

29.     To obtain coverage under the General Permit, a facility discharging stormwater associated with industrial activity is required to submit to DEC a registration form called a "Notice of Intent" to be covered under the General Permit.

30.     Also, in order to comply with the General Permit, a facility owner or operator must reduce the discharge of pollution from the facility to the extent practicable through use of the best available technology.  The owner or operator also must comply with numeric effluent limitations on the quantity and concentration of pollutants discharged from the facility established in the General Permit, as well as narrative ("non-numeric") effluent limits established in the General Permit.  Facility owners and operators reduce pollution and comply with effluent limitations primarily by adopting "best management practices" that reduce the discharge of polluted stormwater.  Best management practices include both changes to industrial practices and activities (for example, more frequent inspections and site clean ups) and concrete, structural changes to the property that prevent stormwater from coming into contact with pollutants in the first place and that otherwise reduce the amount of polluted stormwater eventually discharged from the facility.  In addition, the owner or operator must perform inspections, conduct monitoring

7

and sampling, and meet other requirements of the General Permit.

31.     Before submitting a registration form to DEC, a facility discharging stormwater associated with industrial activity must first prepare, make available, and implement a Storm Water Pollution Prevention Plan ("SWPPP").  Among other things, the SWPPP must document the best management practices that the facility has implemented to ensure that it is reducing the discharge of pollution from the facility to the extent practicable through use of the best available technology for the industry.

**CWA Citizen Enforcement Suits**

32.     Under CWA § 505(a)(1), any citizen may commence a civil action in federal court on his own behalf against any person who is alleged to be in violation of an "effluent standard or limitation" under the CWA.  33 U.S.C. § 1365(a)(1).

33.     Such enforcement action under CWA§ 505(a), 33 U.S.C. § 1365(a), includes an action seeking remedies for an unpermitted discharge in violation of Section 301 of the CWA, 33 U.S.C § 1311, as well as for violation of a condition of a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  *See* CWA § 505(f), 33 U.S.C. § 1365(f).

34.     Declaratory relief in such cases is authorized by 28 U.S.C. § 2201–02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

35.     Injunctive relief is authorized by Section 505(a) of the Act, 33 U.S.C. § 1365(a).

36.     Violators of the Act are also subject to an assessment of civil penalties.  *See* 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1–19.4.

**V.**

**STATEMENT OF FACTS**

**Defendants Control Industrial Activities at the Facility**

37.     On information and belief, Defendants operate a facility for the collection, processing, storage, reshipment and resale of construction and demolition debris and other recyclable wastes, as well as for the maintenance of waste hauling trucks and waste containers, located at 151 Anthony Street, Brooklyn, New York 11222 (Block 2814, Lots 1, 6, 10, 18; and, Block 2813, Lots 50, 55, 65).

38.     Public records from the New York City Department of Sanitation indicate that Defendant City Recycling Corp. operates the facility at 151 Anthony Street. Defendant Bestway Carting maintains a website on which it states, "we also own and operate a C&D transfer station in Brooklyn, NY, *City Recycling* 151 Anthony Street Brooklyn, NY." https://www.bestwaycarting.com/about-us/ (emphasis added).

39.     Because Defendants control the industrial activities that take place at the Facility, the Defendants are responsible for managing stormwater at the Facility associated with those activities in compliance with the CWA.

40.     The Defendants are the "person[s]", as defined by 33 U.S.C. § 1362(5), responsible for the violations alleged in this Complaint.

**Industrial Activities at Defendant's Facility Expose Pollutants to Stormwater**

41.     The activities and practices of Defendants at the Facility expose materials and pollutants to stormwater.

42.     Activities at the Facility include the collection, processing, and storage of waste and waste containers, and the outdoor storage of trucks and heavy machinery.  In addition, vehicle and equipment maintenance is performed outdoors and exposed to precipitation.

43.     Activities at the Facility also include loading and unloading large amounts of

collected waste from trucks and other vehicles to a storage and processing area at the Facility.

44.     Trucks, dumpsters, roll-off containers, and other waste hauling equipment, including their parts, are stored at the Facility uncovered and exposed to precipitation and are repaired at the facility in a manner that exposes pollutants to stormwater.

45.     Vehicles and industrial equipment at the Facility expose many other pollutants to the elements, including gasoline, diesel fuel, anti-freeze, and hydraulic fluids.

46.     Vehicles driving on and off the Facility or parked on the public street are point sources of pollution.

## Defendants Discharge Stormwater Associated with Industrial Activity From the Facility to Waters of the United States

47.     With every rain storm or snow melt, polluted stormwater associated with the industrial activity described above discharges from the Facility into the municipal separate storm sewer system (MS4) and then into Newtown Creek, a Water of the United States.

48.     The Facility is located in a portion of Brooklyn where all of the stormwater flows into the MS4 system and is eventually discharged into Newtown Creek.

## Defendants have not Obtained Permit Coverage for These Discharges

49.     Upon information and belief, the Facility is not covered by an individual NPDES permit.

50.     Upon information and belief, the Facility is not covered by the General Permit.

51.     Upon information and belief, Defendants have not complied with any provisions of the General Permit.

52.     Accordingly, on September 29, 2017, Plaintiff sent Defendants via certified mail the notice of intent to sue described above and attached to this complaint as Exhibit A.

53.     Defendant's violations of the CWA at the Facility are ongoing and continuous, are capable of repetition, and result from the same underlying and inadequately resolved causes.

## VI.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Unlawful Discharge of Pollutants
### (Violations of 33 U.S.C. §§ 1311, 1342)

54.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

55.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), provides that the "discharge of any pollutant" by any "person" is unlawful, unless the discharge complies with various enumerated sections of the CWA.  Among other things, Section 301(a) prohibits discharges not authorized by a valid NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

56.     Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" to include "an individual, corporation, partnership [or] association."

57.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

58.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include, among other things, industrial wastes, chemical wastes, biological materials, rocks, sand, and garbage discharged into water.

59.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

11

60.     Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

61.     40 C.F.R. § 122.2 defines "waters of the United States" to include, among other things:  (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (ii) all interstate waters; (iii) tributaries to such waters; (iv) wetlands adjacent to such waters or their tributaries; and (v) all other waters the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce.

62.     Section 402(p) of the CWA, 33 U.S.C. § 1342(p) and the implementing regulation found at 40 C.F.R. § 122.26(a)(1)(i) require that facilities discharging stormwater associated with industrial activity obtain a NPDES permit.

63.     Defendants have discharged and continue to discharge stormwater associated with industrial activity that contains pollutants from point sources to waters of the United States without a NPDES permit.

64.     Each and every day on which Defendants discharge stormwater associated with industrial activity without authorization under a NPDES permit is a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

65.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

66.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

### Failure to Apply for NPDES Permit Coverage
### (Violations of 33 U.S.C. §§ 1311, 1342)

67.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

68.     40 C.F.R. § 122.26(c)(1) and 122.26(e)(1) require dischargers of stormwater associated with industrial activity to apply for an individual permit or seek coverage under a promulgated stormwater general permit by October 1, 1992.

69.     For years, Defendants have operated and continue to operate a facility that engages in "industrial activity" as that term is defined in 40 C.F.R. § 122.26(b)(14).

70.     Defendants have routinely discharged polluted stormwater associated with industrial activity from the Facility to waters of the United States.

71.     Therefore, for the last five years, Defendants have been obligated to apply for coverage under an individual or general NPDES permit.

72.     Once Defendants began discharging polluted stormwater associated with industrial activity to waters of the United States, each and every subsequent day on which Defendants have failed to apply for permit coverage constitutes a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

73.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

74.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION

**Failure to Implement Adequate Control
Measures and Best Management Practices
(Violations of 33 U.S.C. §§ 1311, 1342)**

75.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

76.     The General Permit, in Parts II.A and VII, requires that Defendants implement

mandatory general and sector-specific control measures called Best Management Practices

("BMPs") in order to minimize the discharge of pollutants from the Facility.

77.     The selected measures must reduce the discharge of pollution from the Facility to

the extent practicable through use of the best available technology for the industry in order to

comply with both numeric and narrative effluent limits contained in the permit.

78.     Because the industrial activities carried out at the Facility are categorized in SIC

Code 5093 and within SIC Major Group 42, Defendants must also implement the sector-specific

control measures specified in Part VII of the General Permit for Sectors N and P.

79.     Plaintiff is informed and believes, and thereupon allege that, as of the filing date

of this complaint, Defendants have not implemented adequate control measures or BMPs

required by the General Permit.

80.     Defendants have failed, and continue to fail, to implement adequate control

measures and BMPs at the Facility as required by the General Permit.

81.     Defendants' ongoing failure to implement adequate control measures and BMPs

at the Facility as required by the General Permit is evidenced by, *inter alia*, Defendants' outdoor

storage of dumpsters, roll-off containers, heavy machinery, and vehicle/equipment parts without

appropriate best management practices; conducting repairs to roll-off containers and other

equipment in areas where pollutants from metal cutting, soldering and other repair-related

practices are exposed to precipitation; the continued exposure of significant quantities of materials to stormwater flows; the continued exposure and tracking of waste resulting from the operation or maintenance of vehicles at the site, including trucks and forklifts; the failure to either treat stormwater prior to discharge or to implement effective containment practices; and the continued practice of conducting vehicle maintenance outdoors and exposed to precipitation.

82.     Each and every day on which Defendants fail to comply with the General Permit's control measure and BMP requirements is a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

83.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

84.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### Failure to Develop and Implement an Adequate
### Storm Water Pollution Prevention Plan
### (Violations of 33 U.S.C. §§ 1311, 1342)

85.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

86.     Part III of the General Permit requires industrial dischargers to develop, implement and maintain compliance with a Stormwater Pollution Prevention Plan ("SWPPP").

87.     As described in Part III.A of the General Permit, the SWPPP must identify potential sources of pollution that may affect the quality of stormwater discharges associated with industrial activity.

88.     Further, the SWPPP must describe how the discharger has implemented best management practices that minimize the discharge of pollutants in stormwater discharges and

that assure compliance with the other terms and conditions of the General Permit, including achievement of effluent limitations.

89.     The SWPPP must address, at a minimum: (1) each of the universally applicable elements; (2) each of the applicable sector-specific plan elements specified in Part VII of the General Permit and, (3) as applicable, each of the additional special requirements listed in Part III.D of the General Permit for industrial activities that discharge through a municipal separate storm sewer or to impaired waterbodies, activities that take place at facilities that report under the federal Emergency Planning and Community Right to Know Act, and facilities that use secondary containment measures. The SWPPP must include records and documentation of compliance with each of these elements and requirements.

90.     The SWPPP must be representative of current site conditions and kept up to date.

91.     The SWPPP must be signed in accordance with Part III.C of General Permit.

92.     The SWPPP must be kept on-site, at the Facility, at all times.

93.     The SWPPP must be prepared and must provide for compliance with the terms of the General Permit on or before the date of submission of a Notice of Intent to be covered under the General Permit.

94.     Because the industrial activity carried out at the Facility is categorized in SIC Code 5093 and SIC Major Group 42, Defendants must include the sector-specific SWPPP elements specified in Part VII of the General Permit for Sectors N and P, in addition to the SWPPP elements set forth in Part III of the General Permit.

95.     Under Part III.C of the General Permit, the owner or operator of a facility "must make a copy of the SWPPP available to the public within 14 days of receipt of a written request."

16

96.     Plaintiff requested a copy of Defendant's SWPPP on September 29, 2017.

97.     Defendants have not provided a copy of a SWPPP to Plaintiff.

98.     Plaintiff is informed and believes, and thereupon allege that, as of the filing date of this complaint, Defendants have not developed a SWPPP.

99.     Defendants have failed, and continue to fail, to develop, implement and maintain compliance with an adequate SWPPP for the Facility as required by the General Permit and to take the other SWPPP-related actions required by the General Permit and described herein.

100.     Each and every day on which Defendants fail to comply with the General Permit's SWPPP requirements is a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

101.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

102.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION

**Failure to Conduct Routine Site Inspections and Comply With General
Monitoring, Recordkeeping, and Reporting Requirements
(Violations of 33 U.S.C. §§ 1311, 1342)**

103.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

104.     The General Permit requires industrial dischargers to conduct and document comprehensive site inspections at appropriate intervals, but in no event less frequently than twice a year.  The inspection must ensure that all stormwater discharges are adequately controlled and that all BMPs are functioning as expected.  Records of this inspection must be kept for five years.  *See* General Permit, Part IV.

105.    In addition, qualified facility personnel must carry out routine inspections at least quarterly.  *See* General Permit, Part IV.E.  During these inspections, personnel must evaluate conditions and maintenance needs of stormwater management devices, detect leaks and ensure the good condition of containers, evaluate the performance of the existing stormwater BMPs described in the SWPPP, and document any deficiencies in the implementation and/or adequacy of the SWPPP.  *See* General Permit, Part IV.E.  Such deficiencies must then be addressed through corrective actions.

106.    And all covered facilities must conduct multiple types of analytical monitoring as described in Part IV of the General Permit and must keep records of their monitoring efforts. The monitoring required under the General Permit includes both various visual inspections and collection and laboratory analysis of water quality samples.

107.    In addition, Defendants engage in industrial activities that fall within Sectors N and P of the General Permit's classifications of industrial activity, and therefore must also conduct additional analysis of water quality samples for a range of pollutant parameters as set forth in Part VII of the General Permit.  *See* General Permit, Part VII (requirements for Sectors N and P).  These include:

(a)  Total Suspended Solids

(b)  Chemical Oxygen Demand

(c)  Oil & Grease

(d)  Aluminum

(e)  Cadmium

(f)  Chromium

(g)  Copper

(h)  Iron

(i)  Lead

(j)  Zinc

(k)  Benzene

(l)  Toluene

(m) Ethylbenzene, and

(n)  Xylene.

108.    Plaintiff is informed and believes, and thereupon allege that, as of the filing date of this complaint, Defendants have not conducted any of the site inspections, monitoring, and testing required by the General Permit.

109.    Defendants have failed, and continue to fail, to comply with the inspection, monitoring, and testing requirements of the General Permit.

110.    Plaintiff is informed and believes, and thereupon alleges that, as of the filing date of this complaint, Defendants also have failed to retain records and submit monitoring reports as required by the General Permit.

111.    Each and every day on which Defendants fail to comply with any of the General Permit's inspection, monitoring, testing, recordkeeping and reporting requirements is a separate and distinct violation of Section 301(a) and Section 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

112.    Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

113.    Wherefore, Plaintiff prays for relief as hereinafter set forth.

## VII.

## PRAYER FOR RELIEF

114.    Wherefore, Plaintiff Riverkeeper respectfully requests that this Court grant the

following relief, as allowed by 33 U.S.C. § 1365(a) and 28 U.S.C. §§ 2201(a) and 2202:

(a)    Declare Defendants to have violated, and to be in violation of, the Act as

alleged herein;

(b)    Enjoin Defendants from discharging pollutants from the Facility except as

authorized by and in compliance with a NPDES permit;

(c)    Order Defendants to immediately apply for coverage under, and comply

fully with, all applicable requirements of the General Permit (or an

individual permit that is at least as stringent);

(d)    Order Defendants to take appropriate actions to remediate the harm caused

by the violations of its NPDES permit and the CWA, to the extent

possible;

(e)    Order Defendants to pay, jointly and severally, civil penalties of $37,500

per day per violation for all violations of the Act occurring between May

3, 2013 and November 2, 2015, and $53, 484 per day per violation for all

violations of the Act occurring after November 2, 2015, as provided by

Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and by 40 C.F.R. §§ 19.1–19.4;

(f)    Order Defendants to pay the costs of litigation, including Plaintiff's reasonable investigative costs, attorneys', witness, and consultant fees, and other costs, in accordance with Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

(g)    Award any such other and further relief as this Court may deem appropriate.

Dated this 16th day of November 2018    Respectfully submitted,
New York, New York


By:  s/Nicholas W. Tapert

SUPER LAW GROUP, LLC
180 Maiden Lane, Suite 603
New York, NY 10038
212-242-2355

*Attorney for Plaintiff*